ROSENTHAL, MONHAIT, GROSS & GODDESS, P. A.
ATTORNEYS AT LAW
SUITE 1401, 919 MARKET STREET
P. O. BOX 1070
WILMINGTON, DELAWARE 19899-1070

TELEPHONE (302) 656-4433
FACSIMILE (302) 658-7567
E-MAIL RMGG@RMGGLAW.COM

JOSEPH A. ROSENTHAL
NORMAN M. MONHAIT
KEVIN GROSS
JEFFREY S. GODDESS
CARMELLA P. KEENER
EDWARD B. ROSENTHAL
JESSICA ZELDIN

April 4, 2005

The Honorable Gregory M. Sleet
United States District court
844 N. King Street
Wilmington, DE 19801

**Re: Kopacz v. DRBA and Craig Swett, D. Del, C.A,. No. 04-911 (GMS)**
**Kopacz v. DRBA, D. Del., C.A. No. 04-1281 (GMS)**

Dear Judge Sleet:

Jan Kopacz alleges that, on August 9, 2002, he was struck by a vehicle driven by Craig Swett on the deck of the DRBA ferry. According to Swett, Kopacz became verbally abusive when Swett backed up a few inches to allow an individual from the car in front of him to get something out of their hatchback. Four eyewitnesses and the Swett family gave statements indicating that the Swett vehicle did not hit or injure Kopacz. In fact, Swett later testified that Kopacz did not claim to be injured until **after** Swett followed Kopacz to the rear deck of the ferry and demanded his name so that Swett could report his rude and abusive behavior to Kopacz's supervisor.

Kopacz sought medical treatment, and did not return to work on the ferry for several months. Shortly after the incident occurred, an incident report was prepared and statements were taken from the DRBA witnesses, as per the DRBA's standard procedure. The DRBA asked Kopacz to also complete a written statement, but Kopacz refused on the advice of his attorney. (See excerpts of Kopacz's deposition attached as Ex. 1 at 128-129).

On August 14, 2002, Bonnie Miller, the DRBA's insurance manager, notified John Schaffer of Lamorte Burns of a claim with respect to the events of August 9, 2002. (See Miller Affidavit attached as Ex. 2). Schaffer was made aware at that time that Kopacz had engaged an

attorney, and believed that litigation was inevitable. (See Schaffer Affidavit attached as Ex. 3). Even though Kopacz did not initially pursue a claim against the DRBA, he indicated that he intended to pursue a claim against Swett and his insurance carrier. Based on these facts and the fact that Kopacz's version of events was at odds with the accounts of Swett and four disinterested witnesses, Schaffer anticipated that a suit would eventually be brought against the DRBA by Kopacz, Swett or both individuals. (See Ex. 3). He, therefore, passed the claim along to the DRBA's insurance carrier's representative, Karen Hildebrandt, of Thomas Miller Americas, on August 15, 2002, noting that Kopacz was already represented by an attorney. (See Ex. 3). At this point the DRBA, Lamorte Burns and Thomas Miller Americas all expected that litigation would eventually ensue, and their subsequent communications were for the purposes of formulating a legal strategy for future handling.

On October 29, 2002, the DRBA received a letter from Kopacz's first attorney, Jake Shisha, in which he raised the maritime claims against the DRBA under the Jones Act and general maritime law. (See letter attached as Ex. 4). He does allude to the fact that, to date, Kopacz had not made a claim for maintenance and cure because he had been receiving his sick time benefits. Even after Kopacz returned to work, the DRBA, Lamorte Burns and Thomas Miller Americas all continued to believe that the claim would result in litigation, especially since the Delaware Department of Insurance was pursuing a fraud claim against Kopacz. The files in question include communications between the DRBA and its corporate attorneys, Morris, Nichols, Arsht & Tunnel, with respect to that hearing and subpoenas issued to various DRBA witnesses as a result.

On June 27, 2003, Kopacz informed the DRBA that he intended to file suit against them, and indeed suit was filed a few months later by E. Alfred Smith, Kopacz's current attorney. The DRBA's concerns about impending litigation were obviously well founded.

It is the DRBA's position that the confidential communications between it and its insurers are protected from discovery by the attorney client and/or work product privileges. Both John

Schaffer and Karen Hildebrandt are maritime attorneys who render legal advice to the DRBA and its underwriters on claims that are likely to result in litigation. In cases in which suit is anticipated, but not yet filed, Schaffer initially attempts to handle the claims himself before referring them to outside counsel. (See Ex. 3). This includes the formulation of legal strategies and attempting to negotiate a settlement. Id. Schaffer is licensed to practice law in the states of New York and New Jersey, where Kopacz's suit was initially filed [the DRBA is a bi-state entity with offices in both New Jersey and Delaware.] Id. Although Bonnie Miller may not have thought of Schaffer as the DRBA's lawyer, she relied on him to formulate strategy and to determine when it was time to engage outside counsel. (See Ex. 2). Accordingly, his communications with both the DRBA and its insurer should fall within the attorney client privilege.

To the extent that the Court finds that these communications with the DRBA and its underwriters are not protected by the attorney client privilege, they clearly fall within the work product privilege, which is far broader. *Guidry v. Jen Marine LLC*, 2003 WL 22038377 (E.D. La. Aug. 22, 2003)(submitted at Ex. A hereto); *Long v. Anderson Univ.*, 204 F.R.D. 129 (S.D. Ind. 2001) (witness statements taken by insurance adjuster are protected by work product privilege, even though they fall outside of the scope of the attorney client privilege).

Federal Rule of Civil Procedure 26(b)(3) provides that documents which are prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) are not discoverable without a showing of substantial need.

The DRBA admits that not all of the documents within its claims file fall into this category. For example, the incident report and witness statements were prepared in the ordinary course of the DRBA's business and would not be protected by the privilege and, therefore, were produced to plaintiff long ago. *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993). On the other hand, however,

communications between the DRBA, Schaffer and Hildebrandt were prepared in anticipation of the litigation that ultimately ensued. Where the adjuster in question is an attorney who is considering legal theories, the case for work product privilege is even stronger. *Guidry* at *4.

Similarly, internal e-mails between DRBA employees are also protected by the work product doctrine. *See Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 773 (M.D. Pa. 1985) *quoting* 4 Moores Federal Practice § 26.64 [3] at 26-416 (1979). These communications specifically reference Kopacz's "claim," and again discuss a strategy for handling the claim. It seems that plaintiff is talking out of both sides of his mouth. Throughout this litigation, he has argued that the DRBA willfully and wrongfully denied his claim for maintenance and cure. Apparently seeking ammunition to support that claim, he demands the DRBA's claims file which he contends is discoverable because he never made a claim for maintenance and cure in the first place. The plaintiff cannot have it both ways.

There are very strong policy arguments against permitting the production of the DRBA's claims file. If the Court rules that the work product privilege is not triggered until a lawsuit is either filed or explicitly threatened, a plaintiff would be entitled to all communications between the insured and his underwriter as to the perceived value of the claim and the strengths and weaknesses of the claimant's liability case. This would have a distinct chilling effect on free and open analysis of a contested claim, and likely would prevent attempts to negotiate early settlements, thus opening the litigation floodgates and making more work for both plaintiff's and defense counsel. If Schaffer's early analysis and settlement recommendations are no longer deemed confidential, he will have little choice but to engage defense counsel immediately in order to regain the privilege. Claimants will then have to retain counsel to represent them as well, when they might otherwise choose to settle their claims directly.

This and other courts have held that a lawsuit need not be pending or directly threatened in order to trigger the privilege. *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 151 (D. Del. 1977). "The fact that litigation may still be a contingency at the time the document was prepared

has not been held to render the privilege inapplicable, if the prospect of litigation is identifiable because of specific claims that have already arisen. The test to be applied is whether, in light of the nature of the documents and the factual situation in this particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.*; *see also Fontaine v. Sunflower Beef Carriers*, 87 F.R.D. 89 (E.D. Mo. 1980).

In summary, the mental impressions, conclusions, opinions and legal theories of an attorney or other representative of a party are protected. *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d at 1515; *United Coal Co. v. Powell Construction Co.*, 839 F.2d 958, 966 (3rd Cir. 1988). A detailed privilege log is attached and includes a "cast of characters" which explains the roles of the various individuals named in the log. (See Ex. 5). The DRBA is unable to reveal further details concerning these communications without waiving the privilege, and continues to welcome an *in camera* review of the documents which are identified. If a court cannot determine whether the work product doctrine applies from a general description of the documents, then an *in camera* review of the documents is appropriate. *United Coal v. Powell Construction Co.*, *supra*; *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 142 (D. Del. 1977).

Counsel are available at the Court's convenience to provide any further information the Court may require.

Respectfully,

*/s/ Carmella P. Keener*

Carmella P. Keener (DSBA No. 2810)

CPK/jls

cc: James J. Woods, Esquire (via electronic delivery)
E. Alfred Smith, Esquire (via facsimile)
Donald M. Ransom, Esqurie (via electronic delivery)
Clerk of the Court (via hand delivery)